JUSTICE WHEAT,
concurring.
¶44 I concur with the majority to affirm the District Court’s decision that the arbitration clause in Global’s purported contract was unenforceable against Ossello. I take this opportunity to expand upon the state of the law under the Federal Arbitration Act and the extremely narrow tight rope that state courts are forced to walk when attempting to apply existing state law to cases before them. The issue is long past whether there is a contract of adhesion. Most citizens now regularly participate in contracts of adhesion to provide themselves with goods and services that at least seem to be essential to modern life.
¶45 The elephant in the room is not state hostility toward arbitration. As noted in the majority opinion, Montana has a state arbitration act and Montana courts will uphold and enforce an arbitration requirement when the parties have agreed to it. Kalispell Education Assoc., ¶ 22. If there is any hostility, it is toward those who hide behind the FAA, and behind the court decisions interpreting it, to escape any material consequence of running fraudulent confidence schemes. In the present case, if Ossello proves the material allegations of her complaint, it is clear that she was induced into a fraudulent scheme to take $589.29 from her every month, but to provide little or nothing in return.
¶46 Under the interpretation urged by the Dissent, Ossello would be required to pay up to $2000 to participate in arbitration, while at the same time she would presumably be precluded from raising any of the claims against World Law and Global that she alleges in her complaint. Those claims include fraudulent and negligent misrepresentation, violations of the Montana Consumer Protection Act, violations of the Montana Consumer Debt Management Services Act, unjust enrichment, and the unauthorized practice of law.
¶47 More significantly, within the arbitration process Ossello would be placed in the untenable and inconsistent position of acknowledging that the arbitration provision is binding and valid, but that the contract that includes it is not enforceable because it was induced by fraud and deceit.
¶48 In the face of schemes like this, state courts are told that they cannot consider the merits of the situation; that arbitration clauses are inherently severable from the underlying purported contract; that the victim of the fraud must mount a separate challenge against the *360 arbitration clause itself; that the victim of the fraud must mount a separate challenge to the delegation provision in the arbitration clause; and that a challenge to the arbitration clause must stand or fall upon grounds unique to that clause. State courts are told that they may not determine that there was a unified fraudulent scheme to victimize a consumer, but that they may only consider the arbitration clause in artificial isolation. Further, state courts are told that if they decide too many cases against those who hide behind fraudulently-induced arbitration clauses, their state law will be ignored as being hostile to arbitration. Here, for example, if Ossello proves the material allegations of her complaint, there was a scheme to fraudulently induce here to hand over money to Global every month.
¶49 As the majority opinion properly notes, arbitration is a matter of contract law, and the FAA was enacted to place arbitration on the same footing as all other contractual provisions. Under the express and simple terms of 9 U.S.C. § 2, arbitration clauses are enforceable “save upon such grounds as exist at law or in equity for the revocation of any contract.” Supposedly, because agreements to arbitrate are contracts, the initial inquiry should be whether the parties have entered a contract to arbitrate. That issue is or should be determined under basic hornbook contract law — identifiable parties with the capacity to contract, their consent to the contract, a lawful object, and consideration. It should go without saying that purported assent to a contract which is induced by fraud is no assent and therefore there can be no contract. But, a state court that so concludes under 9 U.S.C. § 2 risks having the conclusion vacated as evidencing a hostility toward arbitration.
¶50 The plain language of the FAA exception to enforceability of arbitration clauses, “save upon such grounds as exist at law or in equity for the revocation of any contract,” is rendered meaningless under the approach cited by the Dissent. Surely Congress, in enacting the FAA, did not intend to enable con men and charlatans to place themselves and their fraudulent schemes out of the reach of our courts simply by inserting arbitration language or a “delegation” clause into an otherwise fraudulent contract.
¶51 I concur.
CHIEF JUSTICE McGRATH and JUSTICE SHEA join the Concurrence of JUSTICE WHEAT.